v. Jason Wilemon Right. Take your time getting set up. Case number three is number 23-11056 Geico v. Glasgow Incorporated et al. Mr. Grishinov. Thank you, Your Honor, and may it please the court. This court has repeatedly held that the decisions of the Florida District Courts of Appeal govern this court's application of Florida state law in the absence of any persuasive indication that the Florida Supreme Court would rule differently than the District Court of Appeals. Here, since at least the 1980s, every Florida District Court of Appeals to have considered the issue has held that a motor vehicle repair shop that operates in violation of material provisions of the Florida Motor Vehicle Repair Act is not entitled to collect on its charges, even in quantum merit, even if it seems like that outcome is unfair, from anybody, whether a customer or a non-customer. May I ask you a question? You know, this question about whether the Repair Act, I guess, applies in this scenario when, well, I guess whether the insurance company can be viewed as the customer, it's going to affect a lot in Florida. And it is clearly, purely a question of Florida law. What do you think about certifying the question? I think that there is no need to certify the question, Your Honor, in this case, because the Florida District Courts of Appeal decisions since the 1980s are so consistent on this issue. It has found, the District Courts of Appeal has found over and over and over again that, look, the Repair Act is a remedial statute. It's designed to protect the public from unscrupulous repair shops, from repair shops that do a job and then present a bill without ever giving an estimate, from collecting on those sorts of fait accompli charges. And because of the consistency- But it seems like the case law you're talking about is, for one reason or another, distinguishable from the exact situation that we have here. And, you know, maybe you have a case that you think is directly and exactly on point, in which case, please tell me. Sure. I would respectfully submit, Your Honor, that the 1616 Sunrise Motors case is actually directly on point. There you had a situation that is highly analogous to the situation in the present case. You had a customer who brought in a car to a repair shop and didn't pay for the repair. The repair shop then, you know, asserted a lien on the vehicle, okay? And the actual owner of the vehicle, the car leasing company that had leased the car to the customer, posted a bond to take possession of the vehicle, and the repair shop basically sued to recover on the bond. However, the repair shop had violated the Repair Act. It had not obtained the requisite authorization. Yeah, but there's a difference there, right? I mean, in that case, the leasing company owned the vehicle. GEICO doesn't own the vehicles here. It doesn't own the windshields here. I mean, it just doesn't seem exactly on point to me. It seems a little bit different. We're talking about a specific word, customer. You know, it just, it seems a little bit off. And it's, let me ask you to say, what is the downside that you see of certifying here? I mean, there's nothing that's exactly on all fours with this case. Is there in Florida law? I wouldn't call it a downside that I would see in certifying this case to the Florida Supreme Court. I wouldn't call it a downside, Your Honor. What I would say instead is that in the 1616 Sunrise Motors case, the repair shop contended that it could collect from the non-customer owner of the vehicle, even though its violations, which were admitted of the Repair Act, would have precluded recovery from the customer itself. But even so, the customer, I guess, is sort of an agent, is almost like an agent, right, of the leasing company. But under no situation can I imagine that the person who owns the car in the case we're talking about, the scenario we're talking about, is the agent of GEICO. So that is just, it seems different to me. Why doesn't that make a difference? Because the customer is defined by the statute, not as an agent of anybody. It's defined as the person who signs the written repair estimate. That's true, but that is absolutely true. But even so, I mean, principles of agency law can apply under statutes, even with defined terms. Yes, Your Honor, but here I think that it's not really a consideration that would have an effect on the outcome of this case. Why not? Because here, you know, the fundamental issue is whether or not a repair shop that operates in pervasive violation of numerous material provisions of the Repair Act can collect on its charges at all, whether from a customer, a non-customer, or anybody else. And the answer to that question, over and over again, consistently from the Florida District Courts of Appeals, has been unequivocally no. And your best case is Sunrise? I would say that is yes. Now, Sunrise was before the amendment to the Repair Act that added the remedies provision, right? Before the amendment to the Repair Act that added the remedies provision we have here. Which remedies provision? The one about the customer. No, the time Sunrise had, the time when the Sunrise case was decided, Your Honor, the term customer was defined differently in the Repair Act, but fundamentally in Sunrise. I understand, so it was before the current statute that we're looking at, that provision in the statute. It was before the current definition of customer. In addition, Sunrise dealt with a lien, purely with the lien, and whether the lien holder could go and take back the car. No, Your Honor, Sunrise dealt with the question of whether or not the repair shop, what had happened in Sunrise, Your Honor, was that the repair shop asserted... Well, all they said, the repair shop couldn't enforce the lien for repairs by refusing to return the vehicle to the customer. That's all it held. Well, actually, Your Honor, it also pointed out in footnote... No, I'm talking about what it held, not in the footnote. I'm talking about what the case held, because I think you very much overstate, it's very concerning to me, both Sunrise and Raymar in your briefs, just for my personal view about how you try to use those cases, and you've just done it here today, saying it's very analogous. It deals with a different lien statute, it deals with a different customer statute. It's wholly unhelpful here. So let me also go to what I'm very concerned about. Your client's been sued in state court by all these Glasgow vendors, right? By Glasgow, Your Honor. Yes, by the vendors. Correct. And saying, we want to be paid in full, correct? Correct. And 11 cases have already rendered verdict against your client, saying they're entitled to be paid in full under Florida law, correct? I don't know if that's exactly what they've said, but yes, they have certainly been able to collect in some of the county court individual collections cases, yes. Well, there's small claims cases, and one of them went up to the trial circuit court, correct? I believe so. And there's a written opinion saying GEICO is required to pay these vendors in full, not this discounted price, but the full amount of the invoice in the transaction. Isn't that correct with the Florida? Maybe a trial court has held. Looking at Florida law, that's what they've held. I do believe that may be the case, Your Honor. Okay. All right. So we've got 1,700 of those cases in state court, right? Against your client by glass vendors. There's a lot of them, Your Honor. Okay. See, this is what you admit that in your brief, so I don't anyway. Fifty-three of them have been settled, and 11 have gone to final judgment. Is that wrong? I think it may be close to that, Your Honor. Okay. The exact number. And so we've got Florida courts upholding these contracts here, okay, No, same technical violations. Respectfully, I don't think those issues were presented in the context of those collections laws. I agree with that, but they would have been affirmative defenses, just like you're trying to assert an offensive claim here. Why would this claim not have been affirmative defenses to the suits on those contracts? I.e., you can't collect on this invoice because you violated the Repair Act. I know it wasn't asserted. I'll accept that. I can't really tell from the state court dockets, but that's not discussed in the opinions. But it would have been an affirmative defense under the Repair Act, wouldn't it? It could have been an affirmative defense, Your Honor. Right. It's not an enforceable contract. But we're not trying, Your Honor, to overturn any of those individual county court decisions. I don't think that's the issue I'm trying to get to here. I'm trying to get to now you're coming to federal court and you're saying the Repair Act here, because they didn't have an estimate, and whatever else you say was violated, they cannot recover, right? Correct, Your Honor. And those same issues were affirmative defenses that could have been raised in each one of those other cases because they all were handled the same way, correct? They might have been raised, but I don't believe that they were, Your Honor. That's not what I asked. I said they could have been raised there. Yes, Your Honor. Okay. So tell us what are the horrible technical violations. Let's go through the technical violations of the repair. I know there's no written estimate. That's the main one. Well, there was no opportunity for the customer to waive into the written estimate provision. They were never given the requisite disclosure in the form required by the statute. Okay. There are assignments all of the customers assign, correct? Correct. And all of those assignments that each customer assigns, I know they don't deal with the estimate, but they all say that the customer hereby agrees to allow the glass vendor to sublet to somebody. They say that, right? They all signed them. I don't think that that is a no. That's not my question, whether you think that's good enough. Sure. They said you can sublet. I don't think all of them said that, Your Honor. I think some of them said that. Well, they're a form document. I think that they changed the form, Your Honor. Okay. At some point in their course of business. But I do not think that they disclosed to the GEICO insureds, who were the customers in this instance, that they intended to subcontract all of the work to independent contractors. Well, it says we agree you can sublet the work to another party. I don't think that's exactly what it says. I think it says sublet work, Your Honor. And I don't think that that's clear at all as to whether or not Glasgow intended . . . Okay. You've answered my questions. Thank you. Okay. One more question. Yes, Judge. You keep relying on these older District Court of Appeal decisions from Florida, which you say stand for the proposition that a repairer in Glasgow's position can't recover, even in quantum merit, if they violate the Repair Act, right? Correct. That's correct from anybody. Okay. But don't those decisions put the cart before the horse? Isn't the question whether or not, for the Repair Act claims, not the other claims, for the Repair Act claims, whether or not GEICO is a customer? For the Repair Act claim, that's correct, Your Honor. How do you get around the plain language of the statute and its definition of customer? Well, at bottom, Your Honor, Glasgow shouldn't be permitted to use its own violation . . . That's not the point. The point is whether you can affirmatively sue. It's one thing to rely on those cases when you . . . I think that's the point Judge Hall was trying to make with you. It's one thing to rely on those cases when you get sued by a repairer for not paying what they think they should be paid, and one of your affirmative defenses is, or one of your defenses, maybe it's not affirmative, is they can't recover from us, even in quantum merit, because they violated the act in these many ways, see these three or four district court opinions. That's a very different thing than allowing you to sue affirmatively under a statute where you're not a customer. Even if, for argument's sake, and I would disagree that our Repair Act claim, our direct cause of action under the Repair Act was properly dismissed, but even if it were . . . Tell me why. That's what I'm concerned about. Why are you a customer? I would say that courts in Florida have held that the Repair Act is a remedial statute. That doesn't help me at all. You're talking about the end product, and the question is whether you, as a plaintiff, can go into court and have a cause of action, affirmative cause of action, under this statute. Even if, perhaps, Geico's Repair Act claim was properly dismissed, the court shouldn't have granted summary judgment on our declaratory . . . I wasn't asking about the other claims. My question was only directed at the Repair Act claims, because I don't think those cases, even if they stand for the proposition that you say, they don't help you as to whether you're a consumer. They just help you on the merits end if you can get into court. Wouldn't they also help us on the declaratory judgment claim, though, Your Honor? That's not my question. My question was only about the Repair Act claim and whether you can bring an affirmative claim. All right. Thank you very much. You've saved your time for rebuttal. Thank you. Mr. Levine. Good morning, Your Honors. Good morning. May it please the Court, I'm Howard Levine. I represent Glasgow, Inc., as well as the individual appellees. The panel has stolen some of my thunder, and I wasn't really intending to discuss the issue of the state court claims that Glasgow and other independent vendors who are not part of GEICO's preferred network have brought against GEICO. But I think it is important to understand the forest through the trees here. This entire lawsuit is really predicated on a legal fiction, that insurance claims brought by a repair shop which violate the technical provisions of the Motor Vehicle Act are non-compensable. Unlike other Florida statutes, such as the No Fault Statute, the Health Care Act, which do contain voiding provisions, as a matter of plain statutory construction, there's no equivalent voiding provision for non-compliant conduct through the Motor Vehicle Act. Additionally, as a matter of plain statutory construction, the final judgment really can't be disturbed for the simple reason that GEICO is not a customer. Sunrise Sunrise does not help GEICO. Let's talk about Sunrise and why it's inapposite, both factually and legally. First, as I said, the Repair Act doesn't create a private cause of action for an insurer. It has three classes of remedies. A private cause of action for a customer, specifically as it's defined by the Act, and GEICO admits that it's not a customer within the statutory meaning. Second, there are administrative remedies which are inapplicable to this appeal. And third, the lien procedure through which Sunrise Motors and most of the cases that GEICO cites are flowing through. Under the lien provision, an interested party, and that's changed whether it must be the actual customer or a lien holder because of the change in the statutory wording. But under the lien procedure, the point is only whether an interested party can post a bond to recover a vehicle when the repair shop attempts to assert a possessory lien and it's holding the car improperly. That hasn't happened here. GEICO hasn't posted a bond. Glasgow hasn't asserted a possessory lien. And the most important thing from a factual standpoint is that in every case in which a repair shop has not been allowed to collect on its charges, there have been violations that have directly struck at the whole remedial purpose of the Act, which is that the customer didn't give authority to repair the vehicle. Can I ask you a question? I'm going to forget to ask you if I don't do it now. Tell me about one of the claims, one of their common law claims that I could sort of wrap my head around was the unjust enrichment claim. The claim being, allegedly, your clients never gave the actual customer, the owner of the vehicle, an invoice. They never told them about the subcontractor, et cetera, et cetera. At the end of the day, we, GEICO, had to pay an inflated price for the repair. That's not the way it should have been, so forth and so on. Why were you entitled to summary judgment on that claim? First, just to clarify, any allegation relating to overcharges has been extirpated from the second amended complaint. We're only talking strictly about technical violations of the Repair Act, which, as Judge Hull alluded to, consists of, one, the failure to provide the written estimate. It's been decided, I think it was by Judge Barber in this stay-at-home versus at-home auto glass case, that as a matter of law, that obligation does not pertain. That's not even colorably under the statute. Help me understand, and I'll ask Mr. Gershon off the same question. What were the parameters of the unjust enrichment claim in the second amended complaint then? If the overcharging, as you put it, is out, what is the unjust enrichment based on? I'm answering this question essentially on behalf of Mr. Gershon. No, you can give me your understanding. My understanding is very simple. Every cause of action flows through this fallacious legal fiction that claims are non-compensable if there's any violation of the Repair Act. Now, regarding the unjust enrichment questions. So you think that the unjust enrichment claims as ultimately pled were that because there were, in your view, may have been technical violations of the Act, they weren't entitled to any compensation at all, and as a result, they were unjustly enriched at your detriment, at GEICO's detriment. Yes, Your Honor. You put a finer point on it with the second amended complaint when you look at the strikeouts. They throughout are saying that because of the Repair Act violations, you should have had no payment at all. That's exactly correct, Your Honor. That is what's left in the case. And that you . . . Excuse me. That you . . . I'm not sure they took out all the fraud. I haven't gotten into this. They did take out traditional fraud counts. While they didn't take out any counts, I was very surprised to see they still have all eight counts there. And so what they did, and a lot of this is very, in my view, trying to skirt around this and that, and I even think they skirted around a little bit the last opinion we did. They still say . . . They say, oh, they take out this fraud business, but if you read it carefully, they say, and because you are entitled to no payment at all, then you have misrepresented, okay, that you are entitled to payment, and so therefore we have a RICO violation. Because of the technical violations, no payment, and then you, as the RICO predicate, you have misrepresented to whoever that you were entitled to payment. Is that a fair statement? You're correct, Your Honor. Because I can't figure out what the second RICO predicate . . . And that fallacy gets plugged into each and every cause of action. Oh, absolutely. They didn't change one cause of action. Actually, it was very . . . I was shocked with the last opinion. I would have thought they would have narrowed the cause of actions, they would have dropped some, they leave all eight, and they have this very clever little word language change, which I'm not sure takes out all of the kind of fraud-type claims that the first panel said that's been denied on, and you don't have a final judgment. To cut to the chase, Your Honor, the hubris of this case is that GEICO has had success under the PIP statute, where there is a voiding penalty for any noncompliance with the act. And they've taken the liberty, in my view, improperly and dangerously skirting Rule 11 by so doing, by averring as a fact that under the Repair Act, any noncompliant repair shop has a claim that's non-reimbursable because it's implicitly unlawful and fraudulent. There are so few facts in this case to hang their hat on, even regarding technical noncompliance, which we believe that on a summary judgment record, they really can't even establish that there is technical noncompliance if one accepts the fact that there's not an obligation to give a written estimate to a customer when the customer is paying less than $100, and everybody knows here that the customer has paid nothing. As Judge Lux said in the prior argument, everybody gets exactly what they want. And if GEICO wants a clause of action for insurance fraud . . . Moreover, all the vendors are winning all these cases in the state court, and the state court says, you can't discount this. The invoice price is fair and reasonable, and you're entitled. I mean, talk about the unjust enrichment. All these state courts have said there's no unjust enrichment. Pay the full value of the invoice. It's fair and reasonable. They've been tried. It goes on and on. I don't understand why we're in federal court, I guess, on all of this. If I could just circle back to Judge Jordan's question . . . Go back to his . . . . . . about unjust enrichment, because this really pertains to all the common law counts. We have the Buell case, where the Eleventh Circuit made clear that there's not a common law remedy for a statutory violation, unless the statute explicitly sets forth that a claim is non-compensable for that violation. So, that applies in the unjust enrichment, and that's actually been even bolstered recently through the Florida Supreme Court decision in Pincus v. American Traffic Solutions, where it was held that as long as there is consideration given, there's not going to be unjust enrichment. So, even if one wants to construe Pincus in the most narrow fashion, as limited to the circumstances of that case, in this case, Geico has put nothing on the record with respect to how they were damaged, or how Geico was unjustly enriched. We all know, in every single case, the customer was provided the windshield. There's not one instance where a customer had a complaint about the windshield. And in each of those cases, where the customer got what they wanted, Geico paid what it wanted it to pay anyway. So, there is nothing adduced on Geico's record that could possibly implicate any unjust enrichment, because there's no attempt to establish any factual basis for how the benefit conferred was improper under the circumstances. It just falls back to the same leitmotif, any violation of the Repair Act is non-compensable, and implicitly, and this is a gray area, because they are, in my opinion, improperly trying to create a misimpression that somehow there are bad acts, as would be commonly understood by a lay person, which simply don't exist at all. They're trying to put a square peg into a round hole, misrepresenting to the tribunal that the Repair Act is somehow analogous to the PIP statute or the Health Care Act, where claims are not compensable. And it's not. Are you representing Glasgow in these thousands? No, I have . . . There's somebody else doing all that? Those are another set of attorneys. And who's representing Geico in those cases? Different attorneys from the same law firm. From this same law firm? Correct. Okay. And they've had trials in some of them. There are, and Your Honor, honestly . . . Okay, that's enough about that. All right, in your view, and I'm going to ask opposing counsel this, if we were to certify something, and if technical violations, these particular ones here that are alleged, I'm not even sure they're proven, but for sake of argument, if you say, here's what it is and here's what they did, I mean, the Forestry Court could say that's not even really a technical violation. I think the language in the assignment is enough to say, to satisfy the Repair Act as to letting somebody else do the work. But the Florida Supreme Court could decide that. If they are technical violations, let's assume that. They first could say there really are no technical violations. Or they could say, here are the only ones that are technical violations. But assume they're technical violations, could the Florida Supreme Court say that didn't void the contract here and they were still obligated to pay for the work performed, would that end the whole case because that's the RICO predicate or would there still be something left? I think as the issues have been framed by GEICO, that does end the whole case. I don't see any reason for . . . I'm not getting to whether we should or should not. We could decide that ourselves. I understand that. We could do it on custom or we could do it voiding. But I just wanted to know if that would end the whole case. It would. Uh-huh. Let me see if he agrees with that. That's the deal. The district courts that have addressed this have held uniformly by citing to various district court cases, opinions that have made clear that if there is not an explicit, express statutory proscription against reimbursement or compensability to a noncompliant provider, that if there's no voiding penalty, these causes of action can't survive. That was the case in the Husk v. Kugra data transfer case under FDUKTA and Judge Mizell here did a survey of Florida cases and have found that no case has ever held that there would be any predicate under FDUKTA. We have an obligation to look at our own appellate jurisdiction. Do you think there's an argument here that the complaint still has some of the infirmities that Judge Luck identified that makes it a non-final order here? As I tried to explain in Atlanta last year regarding that issue, what GEICO did was they excised everything that was related to the specific wrongdoings, as it were, that Judge Mizell found to be triable, those being the overcharges, misrepresentation regarding assignment of benefits. I can't remember what the other was, but those are clearly gone. What remains and what makes it a little tricky in reading the amended complaint is that GEICO relies on the catchall in the Motor Vehicle Act, which talks about any misrepresentation and what they've done is they've tried to pigeonhole this purported violation regarding the use of nondisclosed subcontractors into something fraudulent by saying that Glasgow has billed fraudulently as their RICO predicate because the work was being done by a nondisclosed subcontractor. And in that regard, since GEICO is so eager to have this court rely on district court decisions where the Florida Supreme Court hasn't spoken, there are cases. There was a fifth DCA case which answered the certified question whether a provider can bill for a work done by an independent contractor as services rendered under the PIP statute, and it answered the question by saying that a 1099 employee and a 1099 independent contractor and a W-2 employee are virtually indistinguishable, and that case is the MRI, regional MRI of Orlando. I'll give you a site. And relying on that case, Judge Martinez in a case litigated by this law firm held the same thing where the theory was where an MRI had an independent orthopedic, a chiropractic clinic had a masseuse who was an independent contractor, and Judge Martinez said that he had to follow the MRI of Orlando case, and GEICO made the same argument that it's not a company that's doing the billing, and therefore it's fraudulent. Okay. We've taken you way over your time, and we appreciate the help. You can wrap up in 15 seconds if you'd like. I'll conclude where I am. Okay. Thank you very much. Obviously, we believe that the record doesn't support either legally or factually any disturbance of the summary judgment motion, and the one thing that I didn't get into relates to what was not discussed in the summary judgment record but is an alternative basis in the record. GEICO has not established legally cognizable damages with respect to any of its causes of action. Thank you. All right. Thank you very much. Mr. Gershenhoff. Thank you, Your Honor. At a minimum, a fact question should have precluded summary judgment on GEICO's declaratory judgment claim in which GEICO seeks a declaratory judgment that because of the defendant's alleged violations of the Repair Act, they're not entitled to collect payment on their outstanding charges. The record was replete with evidence demonstrating, or at least which tended to demonstrate, that Glasgow was operated not in technical violation of the Repair Act but in pervasive violation of some very material provisions of the Repair Act that are designed to protect the public. The case law is also very clear. Just list them. I'm not going to argue with you about them. What are the pervasive violations they did? How many are they? Three, four, five? They subcontracted in every claim, Your Honor. They subcontracted the repair work without notice to you. That's one. Next one. They failed to present the customers with the written estimate waiver language in the required form. That's two. Next one. They failed to provide the customers with any written estimates at all before they did the work. They failed to provide the customers, as the Repair Act requires with written invoices at the completion of the work, itemizing the work that had actually been done. Okay. Next. They routinely permitted, and this is perhaps a more minor violation, but it's still a violation of the Repair Act. They allowed the customers to sign work orders and other documents, which failed to list the automobile's odometer readings as well. And those are, I would say, the most. Let me go to the RICO case. Sure. The RICO counts. Tell me what the predicate act. Is there anything other than Repair Act violations that underlies the RICO count? Well, the RICO violations are no. Right. So if the court were to, whether the Florida Supreme Court or us, that these technical violations don't void the transaction here, would the RICO case be over? The Repair Act, they're still entitled to. If they were entitled to payment. Payment. There would be no misrepresentation in their bills, and so there couldn't be any mail or wire. Right. So to state it again, because I want to make sure this is clear, if a court determines that even assuming these are whether technical or pervasive or significant, however you want to say they are violations, that they do not void the contract and RICO is entitled to payment on for its work, the case would be over. All eight counts. Yes, but can I offer just a but? Yes. Yes, but the court would have to find either this court or the Florida Supreme Court. And I think if this court has any doubt, it should certify the question of the Florida Supreme Court. On what? On whether or not a repair shop's violation of the Repair Act, okay, precludes it from recovering from an insurance company, just as it would preclude the repair shop from collecting from the customer, him or herself. My first question was they're not trying to collect anything from the customer here, okay? Yes. The whole case here is collection against GEICO. You're not got an assignment of anybody's claim, right? GEICO doesn't have you're not offering a customer claim. No, Your Honor. All right, so let's go back and get the question and make sure we have it clear. If a court were determined that the alleged violations of the Repair Act, which you've just said are five in number, if those violations, assuming they were found to exist, I'm not even sure they exist, but if those violations, if they were, let me start over. If a court were to determine that the alleged violations that are five in number that have just been outlined by you, or the violations that are claimed in the case, do not preclude Glasgow from recovering against GEICO, the amount of the invoice, this case would be over. Yes, I do believe it would be, Your Honor. Just to be clear, sorry, just one follow-up point. If the Florida courts or we were to find that customer, the word customer does not include GEICO, the case would be over as well, regardless of what happens on the. No, I would disagree with that, Your Honor, because, again, you have courts which have held, district courts of appeals, particularly 1616 Sunrise Motors, that a holding of that nature would undermine the purposes of the Repair Act, a repair shop that is precluded from recovering. You're arguing to the merits of the question. Go back to the question. Right. You're disagreeing with the premise of the question. The premise of the question is one of the courts, whether it's us, and I don't know that we're going to, just a hypothetical, whether it's us or the Florida Supreme Court, concludes that the word customer does not include GEICO, and therefore you have no cause of action under the Florida Repair Act. We would have no cause of action under the Florida Repair Act, but our declaratory judgment claim, I think. Let her finish her question. I'm sorry, I thought you were done. My question for you is, would there be anything left of your case? And if so, what is left exactly? I would say, Your Honor, and I'm sorry I interrupted you. That's all right. I would say that, yes, our declaratory judgment claim would survive because you have cases such as, in particular, 1616 Sunrise Motors, which stands for the proposition that a repair shop that operates in It can't collect from anybody, even in Quantum, Maryland. Its violations of the Repair Act preclude recovery. And it's not just older cases that generally hold that a repair shop that violates the Repair Act is ineligible to collect. Let me stop you for a second. The problem there is that, essentially, you're saying that the definition of customer means nothing because, effectively, you're doing an end run around the Repair Act. You're basically saying that just because we don't meet the definition of customer doesn't mean that we're not effectively protected by the Repair Act. That's what you're saying as a matter of reality. Why isn't that what you're saying? I think, in a manner of speaking, that is what I'm saying. I think the Repair Act doesn't only . . . Okay. Isn't that a problem? I would respectfully say no, Your Honor. I think the Repair Act is designed to protect the public from unscrupulous repair shops. And I do believe, Your Honor, that it's not just me that feels that way. It was the Florida District Court of Appeals in the 1616 Sunrise Motor School. Okay. I respectfully disagree with that characterization. But, in any case, let's just assume for purposes of this question, that you're right. The next point that I want to make sure I have clear is that there's no separate . . . Your causes of action don't rely in any way on anything other than a merits determination under the Repair Act that there's been a violation of the Repair Act. Is that correct? Every single one of your causes of action, whether declaratory judgment or whatever else, in order for you to win, we have to find that there was a violation of the Repair Act. Is that right? Yes, Your Honor, or at least I would say that there was a question of fact as to whether . . . No, no, no, no. She's not asking that. Okay. Let me phrase it differently and see if we can get a clear answer because this is important for us to figure out whether or not we are going to certify anything to anybody because things have to be case dispositive or issue dispositive at least. Is every one of your claims statutory or otherwise dependent on a finding that Glasgow violated the Repair Act? Yes. Okay. So, if there is a ruling by some court that violations of the Repair Act do not lead to zero responsibility or zero payment, you lose? Yes. Okay. Got it. Yeah, but you have to have the second part, not just the violations and not just that you're not a customer. The court would have to decide because you've stipulated you're not a customer. Yes, Your Honor. So, we don't know whether you're a customer or not. We don't have to decide that. You stipulate you're not a customer under the statutory definition, correct? Correct. All right. So, we know that. So, the question is whether these violations preclude payment. That's really what we're dealing with. That's the legal question, Your Honor. Yeah, whether they . . . It's not just preclude payment. They void it, so therefore you cannot . . . I guess they make the invoice or transaction voidable. Yes, Your Honor. Okay. I think that's correct. Okay. Our argument would be that a repair shop that operates in violation of the Repair Act can't collect on its charges through any means. Okay. Now, help me with this. Why not under collateral estoppel principles? We don't somehow get affected by all these state court cases that are ongoing, that are allowing you . . . I know it's not race judicata, but they're saying they're entitled to pay. They're allowing them to recover the full price. Part of the defenses there are, and I agree with Judge Gordon, it's maybe not an affirmative defense, it's just a defense you could have brought there that the contract's void. Why don't they have some impact here? How can you not raise that as a defense there? Okay. To payment is right there. They're suing to get the full amount of it. Okay. And you're telling us they're not entitled to not only the full amount, but none of it. And the state courts are saying they're not only entitled to payment, they're entitled to all of it. And all of this is going on in thousands of state court cases, but yet a federal court is over here with this claim. Why is that not collateral estoppel, at least against GEICO? Because you're a party there, you're a party here.  It's the same issue. Are they entitled to payment? If it's $300, $400 a case, how can you come up when that's going on? And, by the way, all of those were filed in 16, 17, and 18 before you all ever came to federal court offensively. Why isn't there some estoppel there for you now to come up here and say, no, they're a payright violation, so they don't get anything? It seems like the same issue. Can I offer a couple of responses to that? Yes. My first response would be that I don't believe that these Repair Act issues were raised in those counties. We're going to stipulate that for sake of argument, okay? I don't think that it would be issue preclusion in that respect because the issues weren't raised, number one. But you could have raised them. I don't think we would have a full and fair opportunity to raise the defendant's violations of the Repair Act. Yeah, but that's the whole issue here. You don't think you would have as good a hearing in full and fair opportunity in state court. That's the problem. I would respectfully submit, Your Honor, that that's why we have diversity jurisdiction to prevent an out-of-state litigant from getting- I wish they had appealed the SLAPP Act ruling because there's a lot of SLAPP Act conduct going on here, but they didn't appeal that ruling. May I make another point about that, Your Honor? Uh-huh. You've got 30 seconds. Thank you, Your Honor. Florida federal courts routinely hear these kinds of, for example, declaratory judgment claims, even though there may be a multitude of county court cases pending that somehow involve some of the same issues. We're aware of all that. Okay. In that case, Your Honor, I will conclude. Thank you very much. Thank you both very much.